UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTEFIORE MEDICAL CENTER** <br> 111 East 210th Street <br> The Bronx, NY 10467-2490 <br><br>      **Plaintiff,** <br>   v. <br><br> **MICHAEL O. LEAVITT, Secretary,** <br> **U.S. DEPARTMENT OF HEALTH AND** <br>   **HUMAN SERVICES** <br> 200 Independence Avenue, S.W. <br> Washington, DC 20201 <br><br>      **Defendant.** | Case No. _____ |

**COMPLAINT FOR**
**JUDICIAL REVIEW OF AGENCY ACTION**

Submitted by

Dennis M. Barry
D.C. Bar #00375152
VINSON & ELKINS LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, D.C. 20004-1008
(202) 639-6791

Attorney for Plaintiff

September 21, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTEFIORE MEDICAL CENTER )<br>111 East 210th Street )<br>The Bronx, NY 10467-2490 )<br>)<br>      **Plaintiff,** )<br>  v. )<br>)<br>MICHAEL O. LEAVITT, Secretary, )<br>U.S. DEPARTMENT OF HEALTH AND )<br>  HUMAN SERVICES )<br>200 Independence Avenue, S.W. )<br>Washington, DC 20201 )<br>)<br>      **Defendant.** )<br>_____ ) | Case No. _____ |

**COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTION**

Plaintiff states:

1. Plaintiff, Montefiore Medical Center ("the Plaintiff"), seeks judicial review of the final administrative decision of the Secretary of the United States Department of Health and Human Services ("Secretary") as to the amount of Medicare payment due the Plaintiff for services furnished during the Plaintiff's cost reporting periods ending on December 31, 1991, and December 31, 1993.

**I. JURISDICTION AND VENUE**

2. This action arises under the Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395hh, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-576, 701-706.

3. The Court has jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1), which allows a provider of services under the Medicare program to obtain judicial review of a decision by the Secretary reversing or modifying a decision by the Provider Reimbursement Review Board ("PRRB").

4. Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

5. This action is timely filed in accordance with 42 U.S.C. § 1395oo(f), in that it has been brought within 60 days of Plaintiff's receipt of the Secretary's decision.

## II. THE PARTIES

6. Montefiore Medical Center is an academic medical center located in The Bronx, New York. The Plaintiff is organized as a domestic not-for-profit corporation under the laws of New York. The Plaintiff is and was at all times relevant hereto a "provider of services" participating in the Medicare Program established under Title XVIII of the Social Security Act. Among many other services, during the Plaintiff's cost reporting periods ending December 31, 1991, and December 31, 1993, the Plaintiff operated a hospital-based skilled nursing facility ("SNF") known as the Loeb Center in The Bronx, New York.

7. Defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, is sued in his official capacity. Defendant is the federal officer to whom Congress has delegated administration of the Medicare program. Defendant exercises the administrative responsibility of the Medicare program primarily through the Centers for Medicare and Medicaid Services (sometimes referred to herein as "CMS," also formerly known as the Health Care Financing Administration), an agency of HHS. Defendant also contracts with private organizations to act as fiscal intermediaries for the Medicare Program. 42 U.S.C.

§ 1395h(a). The fiscal intermediary responsible for making determinations on the amount of Medicare payment to be made to the Plaintiff was the Blue Cross/Blue Shield Association and Empire Medicare Services ("Fiscal Intermediary").

### III.  GENERAL BACKGROUND

**A.      Background on the Medicare Program and the Routine Cost Limitation**

8.      The Medicare program is a federal health insurance program that furnishes benefits to qualifying patients who have attained the age of 65 or who are disabled. *See* 42 U.S.C. § 1395i-2(a); 42 C.F.R. § 407.10. The benefits include payment for post-hospital extended care services furnished in a skilled nursing facility. 42 U.S.C. § 1395d(a)(2). The statutory provisions governing the Medicare program are set forth at 42 U.S.C. § 1395 *et seq.*

9.      The Medicare program is administered by CMS,[1] an agency within the United States Department of Health and Human Services.

10.      The Secretary contracts with private organizations known as "fiscal intermediaries" or "intermediaries" to make determinations of the amounts payable to providers for services furnished to Medicare beneficiaries. *See* 42 U.S.C. §1395h(a).

11.      A skilled nursing facility owned by a hospital could qualify for "hospital-based" (also called provider-based) status.

12.      During the time period relevant to this matter, the Medicare program reimbursed eligible hospital-based skilled nursing facilities and freestanding skilled nursing facilities for the

---

[1] The Centers for Medicare and Medicaid Services ("CMS") was known as the Health Care Financing Administration ("HCFA") during the years under appeal. For simplicity's sake, this complaint refers to the agency as CMS.

- 3 -

"reasonable cost" of covered services provided to Medicare beneficiaries. 42 U.S.C. § l395x(v)(1)(A). "Reasonable cost" is defined as those costs "actually incurred, excluding therefrom any part of incurred cost[s] found to be unnecessary in the efficient delivery of needed health services." *Id.*

13. Congress delegated the responsibility for establishing methods for determining reasonable cost to the Defendant Secretary. The reasonable cost "shall be determined *in accordance with regulations* establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. § l395x(v)(1)(A) (emphasis added).

14. The statute prohibits Medicare and other payers from "cross-subsidizing" each other. 42 U.S.C. § l395x(v)(1)(A) (emphasis added). The statute states that

> [s]uch regulations *shall* (i) take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs.

42 U.S.C. § l395x(v)(1)(A) (emphasis added); 42 C.F.R. §§ 413.5(a), 413.50(b).

15. The Secretary is authorized to establish appropriate cost limits as part of the method of determining reasonable costs. 42 U.S.C. § 1395x(v)(1)(A).

16. Prior to 1984, the Defendant Secretary had established routine cost limitations for SNFs. The routine cost limitation for freestanding SNFs was set at 112 percent of the peer group mean for freestanding SNFs, and the routine cost limitation for hospital-based SNFs was

- 4 -

likewise set at 112 percent of the peer group mean for hospital-based SNFs. The routine cost limitation for hospital-based SNFs was higher than that of freestanding SNFs.

17.     The routine cost limitation for hospital-based SNFs changed as part of the Deficit Reduction Act of 1984 ("DEFRA"). Pub. L. No. 98-369, § 2319(b), 1984 U.S.C.C.A.N. (98 Stat.) 494, 1083 (codified at 42 U.S.C. § 1395yy). While the routine cost limitation for freestanding SNFs remained the same, the limitation for hospital-based SNFs was lowered to "the limit for freestanding skilled nursing facilities . . . , plus 50% of the amount by which 112 percent of the mean per diem routine service costs for hospital-based skilled nursing facilities . . . exceeds the limit for freestanding skilled nursing facilities." 42 U.S.C. § l395yy(a)(3)-(4).

18.     Medicare regulations allow exceptions to the routine cost limitation to be granted for SNFs which provide atypical services as defined therein. 42 C.F.R. § 413.30(f) reads as follows:

> (f)     Exceptions. Limits established under this section may be adjusted … for a provider under the circumstances specified…. An adjustment is made only to the extent the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.
>
>> (1) Atypical services. The provider can show that the --
>>
>>> (i) Actual cost of items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified; and
>>>
>>> (ii) Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of needed health care.

19. The atypical services exception was first issued as a regulation effective July 1, 1974. Federal Health Insurance for the Aged and Disabled; Limitations on Coverage of Costs; Interim Schedule, 39 Fed. Reg. 20163, 20164 (June 6, 1974) (codified at 42 C.F.R. § 405.460(f)(2)). The language of the regulation was revised effective July 1, 1979. Medicare Program; Limiting Reimbursement for Provider Costs and for Services by Hospital-Based Physicians, 44 Fed. Reg. 31802, 31804 (June 1, 1979) (codified at 42 C.F.R. § 405.460(f)). The regulation was redesignated as 42 C.F.R. § 413.30(f) in 1986, with no changes to its text. Medicare Program; Redesignation of Reasonable Cost Regulations, 51 Fed. Reg. 34790 (Sep. 30, 1986). This designation was in use during the time period relevant to this dispute, and is the designation used throughout the complaint.[2]

20. Following the revision of the regulation in 1979, the Secretary interpreted the regulation to allow full reimbursement for costs above the routine cost limitation that were the result of atypical services. Regulations Adopted Concerning Limitations on Reimbursable Costs, 44 Fed. Reg. 31802, 31804 (June 1, 1979).

21. The 1984 statutory amendments did not alter the Secretary's rules permitting SNFs qualifying for an atypical services exception from receiving full reimbursement of reasonable costs, and the legislative history states that providers meeting the criteria for exception relief should receive "up to all of their reasonable costs" through the exception process:

> Under this provision, *both hospital-based and freestanding facilities* could continue to apply for and receive exceptions from

---

[2] The regulation has since been amended and redesignated as 42 C.F.R. § 413.30(e). Medicare Program; Revisions of the Procedures for Requesting Exceptions to Cost Limits for Skilled Nursing Facilities and Elimination of Reclassifications, 64 Fed. Reg. 42610, 42612 (Aug. 5, 1999).

> the cost limits in circumstances where high costs result from more severe than average case mix or circumstances beyond the control of the facility. Indicators of more severe case mix include a comparatively high proportion of Medicare days to total patient days, comparatively high ancillary costs, or relatively low average length of stay for all patients (an indicator of the rehabilitative orientation of the facility). *Facilities eligible for exceptions could receive, where justified, up to all of their reasonable costs.*

Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984, Committee on Finance, United States Senate, Senate Print 98-169, v.1, *as reprinted in* Medicare and Medicaid Spending Reductions in the Deficit Reduction Act of 1984, Explanation by the Senate Finance Committee and Text of Title IX of the Bill, MEDICARE AND MEDICAID GUIDE (CCH), Pt. II, No. 423 (Apr. 13, 1984) (emphasis added). After the 1984 codification of 42 U.S.C. § l395yy(a), and consistent with this legislative history and with his interpretation of 42 C.F.R. § 413.30(f)(1) prior to the codification of 42 U.S.C. § 1395yy, the Secretary continued to measure the exceptions he awarded to hospital-based SNFs from the routine cost limitation, and not from some point above the routine cost limitation.

22.     In July 1994, ten years after the codification of 42 U.S.C. § l395yy, the Secretary, through the Health Care Financing Administration (HCFA, now CMS) issued Transmittal No. 378 which published new provisions of the Provider Reimbursement Manual relating to SNF exception requests. This transmittal added PRM § 2534.5, which required that the atypical services exception amount for a hospital-based SNF be measured not from its routine cost limitation, as had been the Secretary's interpretation up through July 1994, but that it now be measured from 112 percent of the SNF's peer group mean, a point significantly higher than the routine cost limitation for a hospital-based SNF. The Secretary thereby created a reimbursement "gap" by which all hospital-based SNFs that provide atypical services to their patients could never receive reimbursement for their per diem costs between the routine cost limitation and 112

percent of the peer group mean. There was no notice or opportunity for public comment prior to the promulgation of the new manual provision, and the change in reimbursement occurred despite the fact that such hospital-based SNFs met the regulatory requirements of 42 C.F.R. § 413.30(f) for the atypical services exception.

23. Although the new manual provision was published in July 1994, it was applied retrospectively to Plaintiff for its requests for reimbursement for its fiscal years 1991 and 1993.

### B. Factual and Procedural Background

24. The Loeb Center, Plaintiff's hospital-based SNF, furnished the requisite atypical services, entitling the Plaintiff to the routine cost limit exception available under 42 C.F.R. § 413.30(f).

25. Pursuant to 42 C.F.R. § 413.30(f)(1), the Plaintiff requested that its hospital-based SNF be granted an exception to the routine cost limitation for its fiscal years ending December 31, 1991 and December 31, 1993, because it furnished atypical services during these cost reporting periods. The Fiscal Intermediary and the Secretary agreed that the Plaintiff had provided atypical services and was entitled to an award of additional reimbursement in the form of an exception amount. However, pursuant to PRM § 2534.5, the Fiscal Intermediary and the Secretary reimbursed the Plaintiff only for its costs in excess of 112 percent of the peer group mean, rather than for all its costs in excess of the routine cost limitation, as had been the Secretary's interpretation of its governing regulation for a period of twenty years. This resulted in a reimbursement gap between the reasonable cost limitation and the exception for atypical services payment of approximately $1,200,000 for each of the two fiscal years in question, for a total amount in controversy of approximately $2,400,000, which represents the amount of

reasonable costs for which the Plaintiff was not reimbursed due solely to the application of PRM § 2534.5. (Plaintiff does not seek a money judgment, but instead prays for a reversal of the Secretary's decision and a remand to the Secretary to compute amounts owing to Plaintiff pursuant to the Court's order.)

26. Plaintiff filed timely appeals of the denial of its full costs in excess of the routine cost limitation with the Provider Reimbursement Review Board ("PRRB") for both cost reporting periods at issue. The PRRB is a board established by the Secretary to hear appeals by a provider of health care services when a provider is not satisfied with the amount of Medicare payment. A decision of the PRRB becomes a final decision unless the Secretary reverses, affirms, or modifies the decision.

27. On June 5, 2006, the PRRB issued its decision in this case, finding Plaintiff entitled to reimbursement for all of its costs in excess of the routine cost limitation. *Montefiore Med. Ctr. v. BlueCross BlueShield Ass'n/Empire Med. Serv.,* PRRB Dec. No. 2006-D29 (2006), MEDICARE AND MEDICAID GUIDE (CCH) ¶ 81, 535. A true and correct copy of this decision is attached hereto as Exhibit A.

28. On June 20, 2006, the Secretary informed the parties that he would review the PRRB decision pursuant to his authority under 42 U.S.C. § 1395oo(f) (2002).

29. On July 1, 2006, the Secretary issued a decision reversing the PRRB's decision. *Montefiore Med. Ctr. v. CMS*, Adm'r Dec. (July 21, 2006). The Secretary found that the methodology used in PRM § 2534.5 was an appropriate application of the reasonable cost requirements and was not inequitable. *Id.* The Secretary also found that PRM § 2534.5 did not represent a change in CMS policy and thus the Agency was not required to engage in notice and

comment rulemaking before promulgating the manual provision at issue in this case. *Id.* A true and correct copy of the Secretary's decision is attached hereto as Exhibit B.

30. Pursuant to 42 U.S.C. § 1395oo(f), Plaintiff is seeking judicial review of the Secretary's decision.

## IV.  CLAIM FOR RELIEF

31. Plaintiff seeks a reversal of the Secretary's decision failing to grant full reimbursement of costs attributable to atypical services and a remand of this matter for a new reimbursement decision for the following reasons.

32. The Secretary's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), because:

   a. It is inconsistent with the governing regulation, 42 C.F.R.§ 413.30(f)(1), as well as the legislative history of the governing statute, 42 U.S.C.§ 1395yy(a).

   b. It violates the statutory prohibition against cross-subsidization between beneficiaries of the Medicare program and other insurance programs.  42 U.S.C. § 1395(x)(v)(1)(A).

   c. It is an arbitrary and capricious departure from the Secretary's long-standing practice of measuring atypical service exceptions from the point of the routine cost limitation, and as such is an abuse of discretion. *See St. Luke's Methodist Hospital v. Thompson*, 315 F.3d 984, 988 (8th Cir. 2002); *Mercy Medical Skilled Nursing Facility v. Thompson*, 2004 U.S.Dist. LEXIS 27365 at 10-11 (May 14,

2004) (unreported); *see also Motor Vehicle Ass'n of U.S., Inc., v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

    d. It arbitrarily and capriciously discriminates in favor of freestanding SNFs and against hospital-based SNFs, in that freestanding SNFs qualifying for the atypical services exception can receive full reimbursement of all costs in excess of the routine cost limitation, but qualifying hospital-based SNFs cannot receive full reimbursement.

33. The Secretary's decision is "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), because it is a retroactive application of PRM § 2534.5. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 215 (1988) ("Our interpretation of the Medicare Act compels the conclusion that the Secretary has no authority to promulgate retroactive cost-limit rules.").

34. The Secretary's decision was contrary to law and in excess of statutory authority in that it relies upon an application of PRM § 2534.5, which was not promulgated in accordance to the rulemaking procedures of the APA or the Social Security Act. The APA requires notice and comment rulemaking procedures be followed when an agency enacts a new substantive rule, *Air Transp. Ass'n of Am. v. Fed. Aviation Admin.*, 291 F.3d 49, 56 (D.C.Cir. 2002), or when an agency changes a definitive interpretation of a substantive rule, *Alaska Prof'l Hunters Ass'n, Inc., v. Fed. Aviation Admin.*, 177 F.3d 1030, 1033-34 (D.C.Cir. 1999). The Social Security Act similarly requires notice and comment procedures be followed before altering an existing substantive legal standard. 42 U.S.C. § 1395hh(a)(2). Because PRM §2534.5 was not adopted pursuant to notice and comment rulemaking procedures, the Secretary's decision applying the

manual provision was contrary to law and in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

35. That the Court set aside the Secretary's final decision and remand this matter to the Secretary and order that the Secretary compute the amount payable under the previously granted exception to the routine cost limitation for its fiscal years ending December 31, 1991 and December 31, 1993, so as to include reimbursement for the provider's costs between the routine cost limitation and 112 percent of the peer group mean.

36. That the Court award Plaintiff the interest that it is entitled to as a matter of right under 42 U.S.C. § 1395oo(f)(2);

37. That the Court award Plaintiff costs; and

38. That the Court grant to Plaintiff such other relief that the Court deems proper.

Respectfully submitted,

Dennis M. Barry
D.C. Bar #00375152
VINSON & ELKINS LLP
1455 Pennsylvania Avenue, NW
Suite 600
Washington, D.C. 20004-1008
(202) 639-6791

Attorney for Plaintiff

September 21, 2006

DC 619388v.5

| **Document Information** ||
|---|---|
| **Copies to Files** | Montefiore FY91/93 pleadings file |
|  |  |
|  |  |
| **Copies to Individuals (VE)** | REW |
|  | LAJo |
|  |  |
|  |  |
| **Copies to Individuals (External)** | Fed Ex: |
|  | faxed: |
|  | mailed:   Summons to Attorney General, U.S. Attorney, and Secretary, HHS |
| **Docket** | Yes:   60 days from 9/21/06 to receive answer to complaint from Secretary, HHS |
| **Approvals** ||
| _____ Atty or PA Initials ||

1044:2483:MON174/26000
619338v5

- 13 -