UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTEFIORE MEDICAL CENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.1:06CV01636 (RMU) |
| | ) |
| MICHAEL O. LEAVITT, Secretary | ) |
| of Health and Human Services, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff in this case, Montefiore Medical Center ("Montefiore" or "Plaintiff"), seeks additional Medicare reimbursement for the costs it incurred in operating a skilled nursing facility ("SNF"). For the periods at issue in this case, Medicare reimbursed providers of skilled nursing care to Medicare beneficiaries on the basis of their "reasonable costs," which were subject to cost limits authorized by statute. Specifically at issue is the Secretary's decision to not fully grant Montefiore's request for an exception to the cost limits because some of Montefiore's costs above the cost limit were "unnecessary in the efficient delivery of needed health services" and were thus unreasonable. Social Security Amendments of 1972, Pub. L. No. 92-603, § 223(a), 86 Stat. 1329, 1393 (codified at 42 U.S.C. § 1395x(v)(1)(A)). During the administrative appeals process and in its Motion for Summary Judgment ("Pl.'s MSJ"), Montefiore confined itself to a procedural challenge, arguing that the Secretary had improperly subjected it to a new rule. Plaintiff's argument was that the Secretary had a long established practice of paying for all costs

over the cost limit, and that under <u>Alaska Professional Hunters Association v. FAA</u>, 177 F.3d 1030 (D.C. Cir. 1999), the Secretary could not depart from that practice.  This argument is clearly contradicted by the controlling regulation, which allows reimbursement for costs above the applicable cost limit only "to the extent the costs are reasonable."  42 C.F.R. § 413.30(f).  Plaintiff cannot seriously contend that the Secretary acted contrary to his statutory and regulatory authority by excluding costs that were not reasonable.  The Secretary has always interpreted the controlling regulation to allow reimbursement only for reasonable costs, and he disallowed the costs at issue in this case precisely because he found that they were not reasonable.

In response to the Secretary's demonstration that he had not changed his interpretation of the controlling regulation, Plaintiff raises several entirely new arguments that were neither presented in Pl.'s MSJ nor presented to the Secretary during the administrative appeals process.  <u>See</u>  Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Reply in Further Support of Its Mot. for Summ. J. ("Pl.'s Reply") at 7-8.  The Court may not consider Plaintiff's new arguments.  In a case where the standard of review is drawn from the Administrative Procedure Act, litigants cannot raise arguments in court that they did not first present to the administrative agency whose decision they are challenging.

Plaintiff argues now, for the first time, that the request it filed for an atypical services exception to the applicable cost limit demonstrates that all of the costs it incurred were reasonable.  This argument is patently false.  SNFs are granted atypical services exceptions if they can show that they have higher costs than other providers in <u>their peer group</u> due to the fact that they generally treated sicker patients.  Montefiore's peer group consists of other hospital-based SNFs.  The fact that Montefiore received an exception because it treated an atypical

patient mix says absolutely nothing about whether (as the Secretary found) hospital-based SNFs as a group have unnecessarily high costs due to inefficiencies. In any event, the Court should disregard this argument because it was never presented to the Administrator – this Court is ill equipped to conduct a de novo review of Montefiore's exception request (totaling 432 pages, Administrative Record ("A.R.") at 829-1261) to determine precisely how much it should have cost Montefiore to provide each service. If Plaintiff actually believes that the documentation it submitted in support of its exception request demonstrates that it had no unnecessarily high costs, as compared to free-standing SNFs, it should have made that argument to the Administrator.

Similarly, Plaintiff cannot now argue for the first time that the Secretary was incorrect to conclude that hospital-based SNFs systematically incur higher costs than free-standing SNFs due to inefficiency. If Plaintiff wanted to attack the substantive reasonableness of the Secretary's decision in this case by arguing that the Secretary lacked evidence that hospital-based SNFs incur unnecessary costs due to inefficiencies, it had ample opportunity to do so. However, Plaintiff cannot now complain that the administrative record does not support this conclusion when it never challenged this conclusion before filing its Reply brief in this Court.

Under controlling precendent, this Court must confine its review to the arguments that Plaintiff raised before the Secretary – that the Secretary had refused to reimburse it for costs that Plaintiff baldly asserts were reasonable or, alternatively, that the Secretary is bound by prior practice to reimburse SNFs for all costs they incur above the cost limit if an exception is granted. Those arguments amounted to the assertion that it was unlawful for the Secretary to deny Plaintiff payment for costs that were in fact unreasonable or, alternatively, that the Secretary is

now estopped from considering whether any costs above the cost limit are in fact unreasonable. It has, of course, never been the Secretary's position that SNFs are necessarily entitled to all costs above the cost limit if they qualify for an exception – the controlling regulation provides for payment of costs above the cost limit "only to the extent the costs are reasonable."

The Secretary has not applied a new legal standard to Montefiore; Montefiore's request for additional reimbursement was denied because the Secretary found that the costs in question were unreasonable, which precluded reimbursement under any reading of the regulation. To the extent that Montefiore wished to challenge the Secretary's conclusion that not all of the costs it incurred were reasonable, it was required to present those arguments, and evidence to support them, before now. Despite Montefiore's assertions to the contrary, it is well settled law that the burden of proof rests with the provider to show that its costs are reasonable; it is not the Secretary's burden to show that they are not. Montefiore never attempted to meet that burden; therefore, under the applicable and deferential standard of review, this Court should uphold the Secretary's determination.

## ARGUMENT

I.     **Plaintiff Cannot Raise New Arguments That Were Never Presented to the Administrator, and In Any Event, Those Arguments are Unavailing.**

Plaintiff now, for the first time, argues that the Secretary erred in concluding that the costs at issue in this case were unreasonable. First, Plaintiff argues that the documentation it supplied in support of its request for an atypical costs exception demonstrates that all the costs it incurred were in fact reasonable. As noted above, the record does show that Plaintiff had higher costs because it treated an atypical mix of patients in comparison to other hospital-based SNFs. See A.R. at 2. There is absolutely nothing in the record, however, that substantiates Plaintiff's

assertion that <u>all</u> of the costs it incurred over the cost limit were reasonable.  A simple example will illustrate the point: if the applicable cost limit for hospital-based SNFs was $100 per diem, and Montefiore could show that its costs were $140 dollars a day (as opposed to $100) because of its patient mix, it could qualify for an exception to the cost limit.  Montefiore's argument appears to be that because it qualified for the atypical costs exemption, it was necessarily entitled to be reimbursed the additional $40 dollars per diem.  The Secretary's point is that if it is determined that a free-standing SNF could have treated the same patients for $135 per diem, and that the remaining $5 dollars in costs are attributable solely to inefficiencies, it would be inconsistent with the Medicare statute to pay Montefiore an extra $40 instead of only an extra $35.  The extra $5 per diem would not represent a reasonable cost and, thus, would not be reimbursable under the controlling regulation, regardless of whether the facilities qualified for a cost limit exception or not.  It simply does Montefiore no good whatsoever to insist that, absent its patient mix, it could have treated patients for $100 per diem.

      In any event, even if Montefiore's documentation did in fact show that it had no cost inefficiencies and that it spent absolutely no more than was necessary to treat Medicare patients (and it does not), it is simply too late for Montefiore to raise this argument now.  "It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."  <u>Nuclear Energy Inst., Inc. v. EPA</u>, 373 F.3d 1251, 1297-98 (D.C. Cir. 2004) (citing <u>United States v. L.A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made

at the time appropriate under its practice.")); see also Nat'l Ass'n of Clean Air Agencies v. EPA, 489 F.3d 1221, 1231 (D.C. Cir. 2007).  Montefiore never suggested to the agency, during the administrative appeals process, that the documentation associated with its exception request demonstrated that none of its costs over the cost limit was due to inefficiencies.  In fact, Montefiore specifically declined the opportunity to submit any evidence on this point during the administrative hearing.  See A.R. at 47.

Montefiore's apparent position is that this Court should conduct a de novo review of its request for an exception and determine on its own whether any of its costs were unreasonable. Ignoring the practical difficulties associated with this task (among other things, the documentation Plaintiff cites compares Montefiore to other hospital-based SNFs not free-standing SNFs), such an undertaking would clearly be contrary to the standard of review under the APA.  As recently explained by the D.C. Circuit in a Medicare case:

> Unlike a district court managing a garden variety civil suit, a district court reviewing a final agency action does not perform its normal role, but instead sits as an appellate tribunal.  Thus, under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards.

Palisades Gen. Hosp. v. Leavitt, 426 F.3d 400, 403 (D.C. Cir. 2005) (citations and quotation marks omitted); see also Federal Power Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952) ("[T]he function of the reviewing court ends when an error of law is laid bare.  At that point the matter once more goes to the [agency] for reconsideration.").  Plaintiff's efforts to immerse this Court in a complex area of Medicare SNF reimbursement, without the benefit of the Secretary's prior analysis, must be rejected.

Similarly, Plaintiff also argues for the first time in its Reply that the Secretary was wrong

to conclude that hospital-based SNFs display systematic inefficiencies (i.e., higher costs that cannot be explained by case mix or other factors) in treating patients as compared to free-standing SNFs.  Plaintiff then argues that this Court should reject the Secretary's conclusion (as unsupported by substantial evidence) because the Secretary did not introduce evidence into the record to support his conclusion.  Plaintiff's argument is that the Secretary's determination should be overturned because he failed to introduce evidence in response to an argument Plaintiff never made.  Plaintiff is attempting to obtain exactly the sort of unfair result that the Court of Appeals rejected in Nuclear Energy Institute, 373 F.3d at 1297-98.  If plaintiff wished to argue that the Secretary's conclusion that hospital-based SNFs have higher costs due to inefficiencies, it was required to present that argument to the Administrator.  Having failed to do so, it has waived the argument.

  Moreover, Plaintiff's assertion that the Administrator's review is necessarily confined to documentation submitted by the parties before the Provider Reimbursement Review Board is simply incorrect, and has been rejected.  Pl.'s Reply at 9.  "This argument ignores the Secretary's explicit authority under 42 C.F.R. § 405.1875(g)(4) (1991), to 'rely on prior decisions of the Board, the Administrator and the courts, and other applicable law, whether or not cited by the parties . . . .'"  Nat'l Med. Enter., Inc. v. Shalala, 43 F.3d 691, 694 (1995).  This authority extends to studies that formed the basis of prior decisions, whether or not the study is in the record of the instant case.  Id.  The Secretary may also rely on "generally known facts not reasonably in dispute."  Id.; 42 C.F.R. § 405.1875(g)(3).  Plaintiff's contention that the Secretary was affirmatively bound to ignore his prior findings regarding hospital-based SNFs' systemic inefficiencies is contrary to these regulations governing the scope of the Secretary's review.

**II.    The Provider Reimbursement Manual § 2534.5 Does Not Represent a New or Impermissible Interpretation of 42 C.F.R. § 413.30(f).**

The Secretary denied reimbursement for the costs at issue in this case because he explicitly found that they were unreasonable. A.R. at 11-14. In the final decision of the Secretary, the Administrator stated that "CMS properly determined . . . that 50% of the difference between the free-standing SNF and the hospital-based SNF cost limits, i.e., the 'gap,' was due to hospital-based SNFs' inefficiencies." A.R. at 11. Costs which are due to a provider's inefficiencies are, necessarily, not "necessary in the efficient delivery of needed health services," see 42 U.S.C. § 1395x(v)(1)(A), and are thus unreasonable (A.R. at 11). "As such costs are not reasonable, CMS properly determined that these costs could not be reimbursed through the exceptions process." A.R. at 11. The controlling regulation states that a SNF qualifying for an exception will receive additional reimbursement "only to the extent the costs are reasonable." 42 C.F.R. § 413.30(f)(emphasis added). Once the Secretary found that the costs at issue in this case were unreasonable, the Secretary had no choice under the regulation but to deny Montefiore's request for additional payment. Plaintiff has not identified, and cannot identify, any interpretation of the regulation under which the costs at issue would be reimbursable.

In a futile attempt to render the Alaska Professional Hunters Association v. FAA, 177 F.3d 1030 (D.C. Cir. 1999), line of authority applicable, Plaintiff now argues that the Secretary has changed his interpretation of 42 C.F.R. § 413.30(f) because he now measures the exception from some point above the cost limit, whereas his prior practice was to measure the exception from the cost limit. Pl.'s Reply at 12. This argument, which is simply a new variation on Plaintiff's original argument, accomplishes absolutely nothing. If costs are not reasonable, they

are not reimbursable. That has always been clear from the text of the applicable statute and regulation. See 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. § 413.30(f). The relevant question is not where the exception to a cost limit is "measured from," but whether the costs in question are reasonable. Even assuming Plaintiff is correct and the Secretary is now applying some new interpretation of the regulation (and he is not), that does not help Plaintiff unless it can show that the costs in question would have been reimbursable under the Secretary's old interpretation. Given that the costs in question are not reasonable, there is no interpretation of the regulation under which Plaintiff can prevail. There is no way to interpret the regulation to require the reimbursement of unreasonable costs when both the statute and regulation preclude such reimbursement. The critical holding in the Secretary's decision was that the disallowed costs were not reasonable. A.R. at 11.

      The actual substance of Plaintiff's argument is that, once an exception is granted, the Secretary may not consider whether some costs above the cost limit are unreasonable. There is simply no support, anywhere, for this proposition. There is certainly nothing in Alaska Hunters that would bind an agency to keep applying an untenable interpretation. Indeed, any interpretation of a regulation that provided for reimbursement only "to the extent the costs are reasonable" that prohibited the Secretary from examining whether costs were reasonable would be contrary to both the regulation and the statute. Moreover, it is quite clear that an agency must discard an interpretation of a regulation, no matter how well established, if that regulation conflicts with a statute. See Dixon v. United States, 381 U.S. 68, 74 (1965) ("A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.") ( internal citations omitted). Under Plaintiff's view, the Secretary is prohibited from

9

considering whether costs above the cost limit are reasonable, despite the clear statutory requirement in 42 U.S.C. § 1395x(v)(1)(A) that the Secretary reimburse only reasonable costs.

In any event, the Secretary's actual practice was to limit reimbursement over the cost limits to only those costs that the exception to the cost limits justifies.  See Saratoga Place v. Mutual of Omaha Ins. Co., HCFA Administrator Decision Mar. 7, 1997, CCH CMS-DEC, MED-GUIDE, ¶ 45,178 (granting exception for atypical nursing costs, but not granting other exceptions for other costs); N. Coast Rehabilitation Ctr. v. Blue Cross & Blue Shield Ass'n, HCFA Administrator Decision Apr. 20, 1999, CCH CMS-DEC, MED-GUIDE, ¶ 80,195 (partially granting an exception for atypical dietary services and granting other exceptions in full).  Costs above the cost limit that are not due to one of the specified exceptions are per se unreasonable.  42 U.S.C. § 1395yy(a).   An exception granted because a provider has an atypical patient mix in no way justifies reimbursement for costs due to inefficiencies.  See Hospice of St. John v. Blue Cross & Blue Shield Ass'n, PRRB No. 93-D28, Medicare & Medicaid Guide (CCH), ¶41,463 (H.C.F.A. 1993) ("HCFA partially approved the exception to the RCL . . . [,] however, . . . the occupancy level of the Provider had to be considered in evaluating whether costs incurred were due to provision of atypical nursing services or a result of inefficiencies in operation or excess staffing.").  Given that Plaintiff has conceded, as it must, that the Secretary should not reimburse it for costs that are unreasonable (Pl.'s Reply at 4), this case is essentially over.  Plaintiff has offered no evidence that all of its costs were reasonable; nor did it dispute at the agency level the Secretary's conclusion that hospital-based SNFs have systematic inefficiencies.

It is well established that the burden is on providers to establish that their costs were

reasonable; it is not the Secretary's burden to prove that costs were unreasonable. See, e.g., Via Christi Regional Medical Ctr., Inc. v. Leavitt, __F.3d __, (10th Cir. 2007), 2007 WL 4285165, at *16 (After noting that providers have the burden of proof, the 10th Circuit stated, "As early as the PRRB Hearing, St. Joseph contended that even if the 'bona fide sale' requirement applied, the consolidation nonetheless qualified as a 'bona fide sale.' . . . Despite this contention, St. Joseph never provided any evidence of the assets' fair market value."); Girling Health Care, Inc., v. Shalala, 85 F.3d 211, 215 (5th Cir. 1996) ("The provider bears the burden of maintaining financial records and statistical data sufficient for proper determination of costs payable under the program."); see also Miami Heart Inst. v. Sullivan, 868 F.2d 410, 412 n.2 (11th Cir. 1989); Fairfax Hosp. Ass'n, Inc. v. Califano, 585 F.2d 602, 611 (4th Cir. 1978). Plaintiff simply never offered any evidence, nor did it even argue, that none of its costs above the cost limit was due to inefficiencies.

It is not as though Plaintiff did not know the Secretary's position on the issues regarding reimbursement for hospital-based SNFs. Cases involving the application of Provider Reimbursement Manual ("PRM") § 2534.5 have twice reached the Courts of Appeals, see St. Luke's Methodist Hosp. v. Thompson, 315 F.3d 984 (8th Cir. 2003), St. Francis Health Care Ctr. v. Shalala, 205 F.3d 937 (6th Cir. 2000).[1] In the administrative proceedings below, Plaintiff voluntarily restricted its arguments to those adopted by this Court in Mercy Med. Skilled Nursing Facility v. Thompson, 2004 WL 3541332 (D.D.C. 2004), appeal docketed, No. 04-5271

---

[1] The same question was also addressed in several unreported decisions. See San Joaquin Cmty Hosp. v. Thompson, No. Civ F 01-5733 (E.D. Cal. Aug. 13, 2002); Fort Bend Cmty. Hosp. v. Thompson, No. H-00-4020 (Mar. 22, 2002); Canonsburg General Hosp. v. Thompson, No. 00-0284 (W.D. Pa. Feb. 28, 2001).

(D.C. Cir. July 27, 2004)).[2] In each case, the Secretary's position has been that PRM § 2534.5 is a reasonable way of taking into account the inefficiencies of hospital-based SNFs when making payments over the cost limit. Plaintiff's insinuation that it has somehow been unfairly surprised by the Secretary's contention that hospital-based SNFs should not be reimbursed over the cost limit for costs due to inefficiencies is completely unfounded.

### III.     Plaintiff's Arguments about Congressional Intent Are Circular or Inapposite.

In his opening brief, the Secretary argued that Congress's decision to lower the cost limit for hospital-based SNFs in the Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 2319(b), 98 Stat. 494, 1082 ("DEFRA") (codified at 42 U.S.C. § 1395yy(a)), supported his contention that hospital-based SNFs have systematically higher costs than free-standing SNFs due to inefficiencies. Plaintiff incorrectly states that the Secretary has no support for this contention. To the contrary, it is well established that this fact is precisely why Congress lowered the hospital-based cost limit. See St. Francis, 205 F.3d at 940 n.3(6th Cir. 2000) (Congress enacted DEFRA in response to several studies demonstrating that "only 50% of the cost difference between [hospital-based SNFs] and [free-standing SNFs] was attributable to variations in the intensity of care or case-mix."). The Sixth Circuit further stated that "[i]nefficiency was deemed the likely cause of the other 50% of the cost difference." Id.  The Secretary has concluded that it would be inappropriate to reimburse hospital-based SNFs for this inefficiency, as costs solely attributable to inefficiencies are not reasonable. St. Francis, 205 F.3d at 945.

Plaintiff's discussion of congressional intent offers nothing to refute this conclusion.

---

[2] Subsequent to the docketing of the appeal, the Mercy case was settled and the appeal therefore became moot.

Plaintiff merely insists that Congress believed that before and after DEFRA, a SNF should be entitled to all of its reasonable costs over the cost limit. While the Secretary disputes that the exceptions process creates an entitlement to any costs over the cost limit (see St. Francis, 205 F.3d at 944-45), Plaintiff is certainly correct that the controlling statute and regulation allow a provider to be reimbursed for all its reasonable costs over the cost limit. See Pl.'s Statement of Material Facts at 17. This discussion, however, says absolutely nothing about whether any particular cost is reasonable. DEFRA did nothing to alter Congress's express delegation to the Secretary to determine reasonable costs. Plaintiff's contention that PRM § 2534.5 – which identifies some costs as unreasonable – is contrary to the intent of Congress is unavailing. Rather, Congress's decision that certain costs should not be routinely reimbursed is evidence that Congress thought that those costs were unreasonable. After all, Congress must have had a reason for concluding that the cost limit for hospital-based SNFs should be lowered.[3]

**IV.     Plaintiff's Attempts to Distinguish FAA v. Hudson Are Unpersuasive, and Consequently, Plaintiff's Argument That the Secretary Has Changed His Interpretation Necessarily Fails.**

Plaintiff's primary (and only real) argument that the Secretary has changed his interpretation of 42 C.F.R. § 413.30 is that prior to the issuance of PRM § 2534.5, the Secretary had not disallowed certain costs of hospital-based SNFs because he had not previously found them to be unreasonable. Plaintiff insists that the Secretary's practice of now denying those

---

[3] The statutory provision setting forth the cost limits directs the Secretary not to recognize costs above the applicable limit as reasonable. 42 U.S.C. § 1395yy(a). Thus, unless the Secretary has used his authority to create an exception to the cost limit, any costs above the limit are per se unreasonable. The Secretary has (of course) not created an exception for costs incurred by hospital-based SNFs due to their inefficiencies. The Secretary has wide discretion in determining reasonable costs. See Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 418-19 (1993).

costs is evidence that he has changed his interpretation of the regulation.  In his opening brief, the Secretary cited to precedent from the Court of Appeals in this Circuit that demonstrates that a different result based on a new understanding of the facts is not indicative of a change in interpretation.  See Hudson v. FAA, 192 F.3d 1031, 1036 (D.C. Cir. 1999).  Plaintiff's Reply offers a laundry list of purported distinctions in an effort to demonstrate that Hudson is not analogous to the present case.  But Hudson is precisely analogous, and each of Plaintiff's purported distinctions fails.

   Plaintiff first argues that in Hudson, the agency's new policy was consistent with the actual wording of the regulation in question.  But Plaintiff cannot identify any words in the regulation at issue in this case that require the Secretary to recognize costs due to inefficiencies or that require the Secretary to reimburse providers for unreasonable costs.  Plaintiff's second and third arguments fair no better.  Plaintiff starts out by stating that in Hudson, the FAA "had a stated basis for its change in interpretation."  Pl.'s Reply at 15.  Plaintiff, however, has misunderstood the Court of Appeals.  The central holding of the Hudson decision was that the FAA had not changed its interpretation of the controlling regulation, but had merely applied its existing interpretation to a new understanding of the facts.  See 192 F.3d at 1036.  Plaintiff then gives reasons why it thinks the FAA's decision was reasonable (and presumably why it thinks the Secretary's was not).  Yet, arguing that the Secretary has made an unreasonable decision, or that the FAA made a reasonable decision in Hudson, does not address whether the Secretary has changed his interpretation of a regulation.

   Plaintiff's next argument is essentially that the FAA had not adopted a substantive rule, but that PRM § 2534.5 is a substantive rule.  First, this assertion has nothing to do with the

Secretary's point that he has not changed his interpretation of 42 C.F.R. § 413.30. Second, as the Secretary stated in his opening brief (Def.'s Mem. of Points & Authorities in Support of the Def.'s Mot. for Summ. J. at 26), the PRM is not a substantive rule. It is not binding on the Provider Reimbursement Review Board, and it is certainly not binding on the Secretary. If Plaintiff could have convinced the Secretary that he was in error and that the higher costs incurred by hospital-based SNFs are justified (rather than being due to inefficiencies), there is absolutely nothing about the PRM which would have stopped the Secretary from granting Plaintiff the relief it seeks.

This argument also demonstrates Plaintiff's apparent confusion about its own case. Pursuant to 42 U.S.C. § 1395oo, this Court has jurisdiction to review the Secretary's final decision in this case, not to consider in the abstract whether PRM § 2534.5 is a permissible policy. While PRM § 2534.5 explains how the Secretary intends to apply the regulation, it is the Secretary's final decision in this case (not the PRM) that is analogous to the decision challenged in Hudson. It does Plaintiff no good to complain that PRM § 2534.5 was not accompanied by an explanation. The Secretary's explanation for his decision in this case is the administrative decision that is subject to review by this Court.[4]

The Secretary's point is that Plaintiff cannot show that the Secretary has changed his interpretation of the regulation by arguing that the Secretary has reached a new outcome. Like in Hudson, "there is no dispute as to the regulation's meaning. . . . Whether this test is met requires a factual determination[,] . . . and clearly, as methods of analysis and other considerations

---

[4] Plaintiff's last objection, Pl.'s Reply at 16, is similarly irrelevant. Plaintiff does not explain why, if notice-and-comment rulemaking had been required, it would have mattered that the FAA sought comments after applying its new policy.

develop over time . . . [,] the . . . response to the test can also." 192 F.3d at 1036.  Moreover, Montefiore's Alaska Hunters argument is nearly identical to the argument rejected by the Court of Appeals in Hudson.  The Court of Appeals clearly held that an agency could reach a different result simply because of a different understanding of the facts, without changing the applicable legal standard.  Montefiore's argument is that because the Secretary had not previously disallowed some costs, he cannot do so now, regardless of whether new facts have come to light that justify the disallowance of the costs at issue.  There is simply no support in the law for Montefiore's argument.

   The Secretary's decision simply reflects the application of the test in 42 C.F.R. § 413.30 to Montefiore.  The Secretary found that hospital-based SNFs systematically have unnecessarily high costs due to inefficiencies in the hospital-based SNF model and that these unnecessary costs are not reasonable.  This is not a different interpretation of the regulation, just an application of the regulation to a changed understanding of the facts which calls for a different result.

   Montefiore's remaining arguments are simply different articulations of those already addressed in the Secretary's opening brief, which the Secretary incorporates by reference.  It is simply not arbitrary or capricious for the Secretary to deny Montefiore reimbursement for unreasonable costs.  Nor can Montefiore show that the Secretary has applied a different legal standard or created a substantive rule without notice and comment.

**CONCLUSION**

For the foregoing reasons, and those stated in the Secretary's opening brief, the Secretary's decision to reimburse Montefiore for its costs only to the extent they are reasonable is consistent with the controlling regulation and the Secretary's statutory authority.  Accordingly, Defendant respectfully requests that the Court grant its motion for summary judgment and dismiss Plaintiff's complaint with prejudice.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610


_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530


_____/s/_____
DAVID L. HOSKINS
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare and Medicaid Services
330 Independence Ave., S.W., Room 5309
Washington, D.C. 20201

Attorneys for Defendant,
Michael O. Leavitt,
Secretary of Health and Human Services