UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MONTEFIORE MEDICAL CENTER, | : | | |
| Plaintiff, | : | | |
| v. | : | Civil Action No.: | 06-1636 (RMU) |
| MICHAEL O. LEAVITT, Secretary, U.S. Department of Health and Human Services, | : | Document Nos.: | 18, 19 |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING THE DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter comes before the court on the parties' cross motions for summary judgment. The plaintiff is a hospital that facilitates and operates a skilled nursing facility ("SNF"). The defendant is the Secretary of the United States Department of Health and Human Services and is responsible for the administration of the Medicare program, including reimbursing SNFs for reasonable costs incurred in treating Medicare patients. The plaintiff alleges that the defendant denied it approximately $2,400,000 in reasonable costs in 1991 and 1993 by applying section 2534.5 of the Provider Reimbursement Manual ("PRM") in violation of the Administrative Procedures Act ("APA") and the Medicare statute. Because the defendant violated the APA by failing to engage in the prescribed notice and comment rulemaking procedures, the court grants the plaintiff's motion for summary judgment and denies the defendant's cross motion for summary judgment.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Medicare is a federal health insurance program covering patients who are at least 65 years of age and are disabled.  42 U.S.C. § 1395i-2(a).  The plaintiff provides SNF services to Medicare patients.  Compl. ¶ 6.  These services are covered under the Medicare statute.  42 U.S.C. § 1395d(a)(2).  The defendant is responsible for determining the amounts payable to SNFs for providing these services to Medicare patients.  42 U.S.C. § 1395g(a).  The defendant delegates management of the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"),[1] an agency within the Department of Health and Human Services.  42 C.F.R. §§ 405.500, *et seq*.  In addition, the defendant contracts with private organizations to act as fiscal intermediaries charged with making initial reimbursement determinations.  42 U.S.C. § 1395h(a); 42 C.F.R. § 400.202.

SNFs are eligible to receive reimbursement for reasonable costs expended in providing services to Medicare patients.  42 U.S.C. § 1395d(a)(2).  A "reasonable cost" is a cost "actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services."  42 U.S.C. § 1395x(v)(1)(A).  To assist in determining reasonable costs, Congress authorized the defendant to establish routine per diem cost limits ("cost limits").  *Id.*  The statute provides for exceptions to these cost limits when SNFs render atypical services.  42 C.F.R. § 413.30(f)(1) (1986).[2]  During the periods in question the statute dictated that, to be granted an atypical cost exception, an SNF must show that the

---

[1]    CMS was formerly the Health Care Financing Administration.

[2]    During the periods in question, the atypical cost exception was covered by 42 C.F.R. § 413.30(f). It has subsequently been amended as 42 C.F.R. § 413.30(e).

>    (i) Actual cost of the items or services furnished by a provider exceeds the applicable limit because such items or services are atypical in nature and scope, compared to the items or services generally furnished by providers similarly classified; and
>    (ii) Atypical items or services are furnished because of the special needs of the patients treated and are necessary in the efficient delivery of health care.

*Id.*

For 15 years the defendant allowed reimbursements of all reasonable costs up to and exceeding the cost limit incurred in the administration of atypical services. Admin. R. at 41. In 1994, the Health Care Financing Administration (now CMS) issued PRM § 2534.5 without engaging in the notice and comment procedures. Compl. ¶ 34. Pursuant to PRM § 2534.5, the amount of the atypical services exception (i.e., the amount above the cost limit that the defendant was willing to reimburse) would be measured not from the cost limit, but from 112% of the SNF's peer group mean.[3] Compl. ¶ 22. By creating a gap between the cost limit and 112% of the SNF's peer group mean PRM § 2534.5 precluded the plaintiff from recovering its entire costs. Admin. R. at 41. The 1994 PRM provision was applied retroactively to the plaintiff resulting in reimbursements significantly less than its actual costs in 1991 and 1993. Compl. ¶ 23.

The plaintiff appealed the defendant's application of PRM § 2534.5 to the PRRB. On June 5, 2006, the PRRB determined that the plaintiff should be awarded all costs in excess of the cost limit in part because PRM § 2534.5 constituted a change in policy and was issued without notice and comment rulemaking. Admin. R. at 31-45. The defendant then issued a decision

---

[3] The cost limits for SNFs are determined based on the mean per diem costs of "peer groups." There are four groups listed in the statute: 1) hospital-based urban SNFs; 2) hospital-based rural SNFs; 3) freestanding urban SNFs; and 4) freestanding rural SNFs. 42 U.S.C. § 1395yy(a).

3

reversing the PRRB on July 21, 2006, concluding that PRM § 2534.5 is not a substantive rule and therefore notice and comment procedures were unnecessary.  Admin. R. at 2-14.

On September 21, 2006, the plaintiff filed a complaint in this court for review of the July 21, 2006 decision.  The defendant answered the complaint on January 30, 2007, and subsequently the parties filed cross motions for summary judgment.  In its motion, the plaintiff alleges that PRM § 2534.5 is an erroneous interpretation of the law; that it violates the APA because the defendant did not engage in notice and comment rulemaking; that PRM § 2534.5 is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"; and that it was improper to apply it retroactively.  *See generally* Pl.'s Mot. for Summ. J. ("Pl.'s Mot.").  The defendant disagrees on all counts and argues that the costs were denied because they were not reasonable.  Def.'s Cross Mot. for Summ. J. ("Def.'s Mot.") at 13-14.  The defendant further proposes that PRM § 2534.5 provides a proper method to determine the reasonableness of costs for atypical services.  *Id.*

## III.  ANALYSIS

### A.  Legal Standard for APA Review of the Board's Decision

Pursuant to the Medicare statute, this court reviews PRRB decisions in accordance with the standard of review set forth in the APA.  42 U.S.C. § 1395oo(f)(1); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen*, 829 F.2d 111, 116 (D.C. Cir. 1987).  The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence in a case . . . otherwise reviewed on the record of

an agency hearing provided by statute." 5 U.S.C. § 706(2)(A), (E). The arbitrary-and-capricious standard and the substantial-evidence standard "require equivalent levels of scrutiny."[4] *Adair County*, 829 F.2d at 117. Under both standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Veh. Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983); *Gen. Teamsters Local Union No. 174 v. Nat'l Labor Relations Bd.*, 723 F.2d 966, 971 (D.C. Cir. 1983). The burden of showing that the agency action violates the APA standards falls on the provider. *Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1018 (D.C. Cir. 1979); *St. Joseph's Hosp. (Marshfield, Wis.) v. Bowen*, 1988 WL 235541, at *3 (D.D.C. Apr. 15, 1988).

### B. Legal Standard for the Notice and Comment Rulemaking Requirement

"Once an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking." *Paralyzed Veterans of Am. v. D.C. Arena*, 117 F.3d 579, 586 (D.C. Cir. 1997). The agency's action will not be accorded deference if it "violates the APA because it constitutes a change in the Secretary's definitive interpretation made without following the required notice-and-comment procedures." *Mercy Med. Skilled Nursing Facility v. Thompson*, 2004 WL 3541332, at *2 (D.D.C. May 14, 2004).

If the notice and comment rulemaking requirement applies the agency must publish notice in the Federal Register, including information as to the "time, place, and nature" of the

---

[4] The D.C. Circuit has explained that the substantial-evidence standard is a subset of the arbitrary-and-capricious standard. *Sithe/Indep. Power Partners v. Fed. Energy Regulatory Comm'n*, 285 F.3d 1, 5 n.2 (D.C. Cir. 2002). "While the substantial evidence test concerns support in the record for the agency action under review, the arbitrary and capricious standard is a broader test subsuming the substantial evidence test but also encompassing adherence to agency precedent." *Adair County*, 829 F.2d at 117.

proceedings; reference to the appropriate legal authority; and the "substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(1)-(3). The agency must also "give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments." 5 U.S.C. § 553(c). Only once these requirements are satisfied can an agency promulgate a new rule, regulation or interpretation.

### C.  CMS Issued PRM § 2534.5 in Violation of the APA's Notice and Comment Rulemaking Requirement

The plaintiff argues that PRM § 2534.5 constitutes a change in the defendant's established interpretation of the regulation governing cost limits because for 15 years the defendant reimbursed all of the costs that the plaintiff incurred from providing atypical services. Pl.'s Mot. at 19. The plaintiff avers that this "long-standing, established" approach constitutes an interpretation in favor of granting all reasonable costs above the cost limit. *Id.* It is undisputed that, for the 15 years prior to the periods at issue, the defendant had reimbursed all the plaintiff's reasonable costs falling under the atypical exception. Def.'s Am. Resp. to Pl's Statement of Material Facts at to Which There is No Genuine Issue ("Def.'s Resp. to Facts") ¶ 17. The defendant, however, believes that the costs denied to the plaintiff were unreasonable and that PRM § 2534.5 is a permissible method by which to determine reasonableness. Def.'s Mot. at 13-14.

In an analogous case decided in this Circuit, the Federal Aviation Administration ("FAA"), without engaging in notice or comment rulemaking, amended its commercial operator regulations to apply to hunting and fishing guide pilots ("guide pilots") who transport customers on small planes in Alaska. *Alaska Prof'l Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030, 1030 (D.C. Cir. 1999). From 1963 to at least 1992, officials in the Alaskan Region branch of the FAA

advised guide pilots that they were not subject to the regulations governing commercial pilots. *Id.* at 1031, 1033. But, in 1998 the FAA published a "Notice to Operators" ("Notice") stating that commercial operator regulations apply to guide pilots. *Id.* at 1033. The FAA acknowledged that guide pilots were not given an opportunity to participate in the decision-making process, but argued that the advice given by its Alaskan Region officials was based on a misreading of a previous administrative holding and no change in interpretation actually occurred. *Id.* at 1035, 1033. The court disagreed, determining that the Notice did signify a change in interpretation. *Id.* at 1035.

Similar to the FAA officials, who did not subject guide pilots to commercial regulation for 30 years, here the defendant has reimbursed atypical costs in their entirety for the past 15 years. Pl.'s Mot at 19; Def.'s Resp. to Facts ¶ 17. Thus, PRM § 2534.5 represents a substantial departure from this interpretation and was subject to the notice and comment rulemaking requirements of the APA. *Paralyzed Veterans*, 117 F.3d at 586. Indeed, a court in this district has already held that PRM § 2534.5 was subject the notice and comment rulemaking. *Mercy*, 2004 WL 3541332, at *3 (holding that the length and consistency of the agency's established practice constituted a definitive agency interpretation of the statute and that "[a]ny significant alteration of [an] established practice requires notice and an opportunity for those affected to comment").

The defendant claims that PRM § 2534.5 is simply a method for determining reasonableness, which is necessary because hospital-based SNFs are not cost efficient. *See, e.g.*, Def.'s Mot. at 4; Admin. R. at 11. But "[t]he [agency's] current doubts about the wisdom of the regulatory system . . . do[] not justify disregarding the requisite procedures for changing the

system." *Alaska Prof'l Hunters*, 177 F.3d at 1035. PRM § 2534.5 may assist the defendant in determining reasonableness, but because it significantly alters an established agency interpretation, notice and comment procedures must be followed.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment, denies the defendant's cross motion for summary judgment and remands this case to the Department of Health and Human Services for further action in accordance with this decision. An order consistent with this memorandum opinion is separately and contemporaneously being issued this 29th day of September 2008.

RICARDO M. URBINA
United States District Judge